# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE

FREDERICK L. CAERY,         )
                       )
       Plaintiff,         )
                       )
VS.                  )       No. 12-2389-JDT-cgc
                       )
SHELBY COUNTY, et al.,     )
                       )
       Defendants.      )

---

## ORDER OF DISMISSAL
## ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
## AND
## ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

---

On May 23, 2012, Plaintiff Frederick L. Caery (a/k/a "Frederick L. Carey"), who was at that time an inmate at the Shelby County Department of Correction ("SCDC") in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § l983, accompanied by a motion seeking leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court issued an order on May 23, 2012, that granted leave to proceed *in forma pauperis* and assessed the civil filing fee. (ECF No. 3.)   The Clerk shall record the defendants as Shelby County,[1] Minus Adams, Karen Mitchell, Sergeant Strickland, Officer S. Wilson, Lieutenant Swanson, Sergeant Franklin, SCDC Director James E. Coleman, Captain Chambers, Sergeant Young,

---

[1]    Plaintiff named the SCDC as a Defendant.  Governmental departments, divisions, and buildings are not suable entities. Therefore, the Court construes those claims against Shelby County. *See generally* <u>Hafer v. Melo</u>, 502 U. S. 21 (1991).

Shelby County Mayor Mark Luttrell, Officer Jerry Harris, Robert Hurd, Officer Turner, Counselor Holiday, and Mr. Spears.[2]

Plaintiff alleges that the SCDC law library contains damaged and out of date law books, no working copier, and no trained paralegal. He contends that Law Library Supervisor Minus Adams and Coordinators Karen Mitchell and Robert Hurd assist inmates with criminal cases, but provide no assistance with civil cases. Caery alleges that he was denied the use of West Law and that Mitchell kept him from attending library sessions on Tuesdays.

Caery alleges that SCDC Director Coleman issued a directive that was emailed by Defendant Speaks cancelling attorney phone calls. Plaintiff contends that no phone calls are made by counselors to attorneys, depriving inmates of the ability to consult with lawyers. Plaintiff admits that inmates were permitted to make collect calls but contends that the limitation infringed on his right of association.

Plaintiff also sues Captain Chambers, the head of segregation and Sergeant Strickland and Officer S. Wilson, who placed Plaintiff in segregation. Plaintiff recites a laundry list of segregation conditions that he finds intolerable: black mold, inadequate plumbing, rats, no cleaning supplies, no hot water, inadequate ventilation, spiders, flies, fruit flies, roaches, raccoons, and no telephone privileges.

---

[2]     The complaint also purports to sue several John and Jane Doe Officers as defendants. Service of process cannot be made on a fictitious party. The filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitation against those parties. *See* Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996); Bufalino v. Mich. Bell Tel. Co., 404 F.2d 1023, 1028 (6th Cir. 1968). The Clerk is directed to terminate the references to the John and Jane Doe defendants.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in Ashcroft v. Iqbal, 556 U.S. 662, 677-79, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009), and in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 1964-66, 167 L. Ed. 2d 929 (2007), are applied. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681, 129 S. Ct. at 1951) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950; *see also* Twombly, 550 U.S. at 555 n.3, 127 S. Ct. at 1964-65 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds'

on which the claim rests.").

"A complaint can be frivolous either factually or legally. See Neitzke [v. Williams], 490 U.S. [319,] 325, 109 S. Ct. at 1827 [(1989)]. Any complaint that is legally frivolous would ipso facto fail to state a claim upon which relief can be granted. *See id.* at 328-29, 109 S. Ct. 1827." Hill, 630 F.3d at 470.

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, Iqbal, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. Neitzke, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." Williams, 631 F.3d at 383 (quoting Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. As the Sixth Circuit has explained:

> Before the recent onslaught of *pro se* prisoner suits, the Supreme Court suggested that *pro se* complaints are to be held to a less stringent standard than formal pleadings drafted by lawyers. *See* Haines v. Kerner, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam). Neither that Court nor other courts, however, have been willing to abrogate basic pleading essentials in pro se suits. *See, e.g.*, *id.* at 521, 92 S. Ct. at 596 (holding petitioner to standards

of <u>Conley v. Gibson</u>); <u>Merritt v. Faulkner</u>, 697 F.2d 761 (7th Cir.) (duty to be less stringent with <u>pro</u> <u>se</u> complaint does not require court to conjure up unplead allegations), *cert. denied*, 464 U.S. 986, 104 S. Ct. 434, 78 L. Ed. 2d 3366 (1983); <u>McDonald v. Hall</u>, 610 F.2d 16 (1st Cir.1979) (same); <u>Jarrell v. Tisch</u>, 656 F. Supp. 237 (D.D.C. 1987) (*pro se* plaintiffs should plead with requisite specificity so as to give defendants notice); <u>Holsey v. Collins</u>, 90 F.R.D. 122 (D. Md. 1981) (even *pro se* litigants must meet some minimum standards).

<u>Wells v. Brown</u>, 891 F.2d 591, 594 (6th Cir. 1989); *see also* <u>Brown v. Matauszak</u>, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting <u>Clark v. Nat'l Travelers Life Ins. Co.</u>, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); <u>Payne v. Secretary of Treas.</u>, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf.* <u>Pliler v. Ford</u>, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants.").

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 150 (1970).

Plaintiff has sued Shelby County. When a § 1983 claim is made against a municipality, the court must analyze two distinct issues: (1) whether plaintiff's harm was

caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992). The second issue is dispositive of Plaintiff's claim against Shelby County.

A local government "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't. of Soc. Serv., 436 U.S. 658, 691 (1978) (emphasis in original); *see also* Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994); Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. Monell, 436 U.S. at 691-92; Deaton v. Montgomery Co., Ohio, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." Alkire v. Irving, 330 F.3d 802, 815 (6th Cir. 2003) (citing Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." Alkire, 330 F.3d at 815 (quoting Monell, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." Searcy, 38 F.3d at 286 (quoting Polk Co. v. Dodson, 454 U.S. at 326 (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts

6

of <u>employees</u> of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 138 (1988) (quoting <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see*, *e.g.*, <u>Fowler v. Campbell</u>, Civil Action No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); <u>Yeackering v. Ankrom</u>, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); <u>Oliver v. City of Memphis</u>, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); *cf.* <u>Raub v. Correctional Med. Servs., Inc.</u>, No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); <u>Cleary v. County of Macomb</u>, No. 06-15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); <u>Morningstar v. City of Detroit</u>, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); <u>Chidester v. City of Memphis</u>, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The  allegations of the complaint fail to identify an official policy or custom which caused injury to Plaintiff. Instead, it appears that Plaintiff is suing Shelby County because he was confined in a county institution when his allegations arose.

Section 1983 will not support a claim based upon a theory of *respondeat superior*

alone. <u>Polk County v. Dodson</u>, 454 U.S. 312, 325 (1981); <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984). A plaintiff must allege that a defendant official was personally involved in the unconstitutional activity of a subordinate in order to state a claim against such a defendant. <u>Dunn v. State of Tennessee</u>, 697 F.2d 121, 128 (6th Cir. 1982). A failure to supervise, control or train an individual is not actionable "unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999). "At a minimum a plaintiff must show that the official least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." <u>Hays v. Jefferson Co., Ky</u>, 668 F.2d 869, 874 (6th Cir. 1982).

It is clear that Plaintiff sues Defendant Mayor Lutrell because of his supervisory capacity as mayor of Shelby County.  Plaintiff alleges no personal involvement of Mayor Lutrell in the actions that allegedly violated his constitutional rights.

The complaint contains no factual allegations against Defendants Lieutenant Swanson, Sergeant Franklin, Sergeant Young, Officer Jerry Harris, Officer Turner, and Counselor Holiday.  When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570.

The Court construes Plaintiff's claims against Defendants Adams, Mitchell, and Hurd about the inadequate law library and lack of free legal phone calls as court access claims. It is true that a prisoner has the right, protected by the First Amendment, "to petition the Government for a redress of grievances."  The scope of this right in relation to prisoners has

been enunciated in <u>Bounds v. Smith</u>, 430 U.S. 817, 821-22 (1977), and its progeny. According to that body of caselaw, the scope of this right for prisoners is limited.  The Sixth Circuit has held that "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." "'Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional consequences of conviction and incarceration.'" <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 391 (6th Cir. 1999)(quoting <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996)).

In <u>Lewis</u>, the United States Supreme Court stated:

> <u>Bounds</u> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.

<u>Lewis v. Casey</u>, 518 U.S. at 355.  The Court declared that no claim exists under <u>Bounds</u> without an actual injury.  Inmates must have sought "to file <u>nonfrivolous</u> legal claims challenging their convictions or conditions of confinement."  *Id.* at 351-53 (emphasis added).[3]  No actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented."  *Id. See also* <u>Talley-Bey v. Knebl</u>, 168 F.3d 884, 886 (6th Cir. 1999)("refusal to mail legal documents could not possibly have led to dismiss of [inmate's] three civil cases").  Here, Plaintiff has not

---

[3]     That an indigent prisoner has no constitutional or other right of access to the courts to prosecute a frivolous action has found expression in previous lower court rulings.  <u>See, e.g.</u>, <u>In re Billy Roy Tyler</u>, 839 F.2d 1290, 1292 (8th Cir. 1988); <u>Phillips v. Carey</u>, 638 F.2d 207, 209 (10th Cir. 1981).

demonstrated such interference.

Plaintiff has had more than adequate access to the courts because he has been able to file this lawsuit in the United States District Court for the Western District of Tennessee. Thus, he has not suffered any actual interference with his right of access to the courts.

Plaintiff's remaining claims are merely a vague and conclusory listing of SCDC conditions during his confinement to segregation that are unpleasant, but do not show a deprivation of the minimal civilized measures of life's necessities.  Plaintiff's claims are Eighth Amendment claims which require a showing that an inmate "is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994); Stewart v. Love, 796 F.2d 43, 44 (6th Cir. 1982).  Within the context of claims that prison conditions constitute a deprivation sufficiently serious to meet the objective component of an Eighth Amendment claim, the Court's inquiry must focus on whether inmates are deprived of the "minimal civilized measure of life's necessities." Wilson v. Seiter, 294, 298 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  The Constitution "'does not mandate comfortable prisons.'" Wilson, id. (quoting Rhodes, 452 U.S. at 349).  Rather, "routine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992)(quoting Rhodes, 452 U.S. at 347).

In considering the types of conditions that constitute a substantial risk of serious harm, the Court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates

contemporary standards of decency, *i.e.*, that society does not choose to tolerate this risk in its prisons.  Helling v. McKinney, 509 U.S. 25, 36 (1993).

Plaintiff fails to even allege how he specifically was affected by any of these conditions or that he suffered any harm as a result of such exposure.  The mere listing of complaints of segregation conditions does not rise to the level of an Eighth Amendment violation.  "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  Wilson, 501 U.S. at 305.

Plaintiff also fails to alleges that he suffered any injury from any condition during his confinement to segregation.  Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Plaintiff's claims also fail for want of an allegation of the requisite harm.

The Sixth Circuit recently held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA.  LaFountain v. Harry, ___ F.3d ___, ___, 2013 WL 2221569, at *5 (6th Cir. 2013); *see also* Brown v. R.I., No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded.").  Leave to amend is not required when a deficiency cannot be cured.  Brown, 2013 WL 646489, at *1; Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte

11

dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."); Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). The deficiencies in Plaintiff's complaint cannot be cured by amendment because Plaintiff suffered no injury and the claims asserted are entirely lacking in merit.

Therefore, the Court DISMISSES the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A. Judgment shall be entered for Defendant.

The Court must also consider whether Plaintiff should be allowed to appeal this decision *in forma pauperis*, should he seek to do so. The United States Court of Appeals for the Sixth Circuit requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed *in forma pauperis*, whether the appeal would be frivolous. Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. Id. at 445-46. It

would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See* Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal *in forma pauperis*.

The final matter to be addressed is the assessment of a filing fee if Plaintiff appeals the dismissal of this case. In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, Plaintiff is instructed that, if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and 28 U.S.C. § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect, without further action by the Court, upon expiration of the time for filing a notice of appeal, the dismissal of any appeal, or the affirmation of the district court's ruling on appeal, whichever is later.

IT IS SO ORDERED.

       s/ **James D. Todd**                   
JAMES D. TODD
UNITED STATES DISTRICT JUDGE